STATE of Missouri, Respondent,

v.

Harrison P. OSTERLOH, Sr., Appellant.

No. WD 39898.

Missouri Court of Appeals,
Western District.

June 27, 1989.

Joseph H. Locascio, Sp. Public Defender, Martha S. Means, Asst. Sp. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P.J., and LOWENSTEIN and ULRICH, JJ.

LOWENSTEIN, Judge.

This appeal consolidates the direct appeal and the appeal for correction of conviction under Rule 29.15 by Harrison P. Osterloh, Sr. from his jury conviction of a count of statutory rape and three counts of sodomy perpetrated on his stepdaughter. Sections 566.030 and 566.060, RSMo 1986. The defendant claims error on evidentiary rulings. Additionally, he asserts that the trial court

erred in denying his Rule 29.15 motion to vacate judgment and sentence without affording an evidentiary hearing. In all, the defendant received thirty-five years in prison. He does not contest the sufficiency of the evidence to support the verdicts.

The victim was born on October 4, 1972. She was fourteen years old at the time of trial. On October 1, 1977, the victim's mother, Sherrie, along with the victim and her brother, R, decided to move in with the defendant whom she later married. Later, P, one of the defendant's children, moved into the house. P was eleven at the time. On December 2, 1978, Sherrie married the defendant. Several years after that, P's younger brothers, G and B (defendant's children), joined the household.

The victim testified when she was five years old and shortly after she moved into the house, the defendant started to sexually molest her. At his request, she would perform oral sex acts on him and the defendant would do the same to her. This conduct continued until the victim turned eleven years old, when, after numerous attempts to penetrate the girl, Osterloh finally accomplished this task. Then, on a regular basis Osterloh began to have sexual intercourse with the victim. Soon thereafter, P, Osterloh's oldest boy, at the instruction of the defendant, started engaging in sexual acts with the victim, including intercourse. G was also instructed by his father to do sexual acts with the victim. The victim also testified that she would give the defendant "head" while one of her stepbrothers had sexual intercourse with her. The crimes for which the defendant was found guilty occurred between May 1, 1985 and April 23, 1986, well before the victim's fourteenth birthday.

The victim testified that the defendant had a violent temper and that he would beat all the children. She also stated that the defendant warned her not to saying anything about the sexual acts to anybody or she would get in trouble. During all the sexual encounters, the mother was either at work or home asleep. Sherrie slept with the fan turned on or with earplugs in to "keep out the noise." The victim was like a "slave" to the defendant. She was frequently ordered to his bed and would later be required to draw his bathwater and fetch him a snack.

On two occasions the victim told her mother about the sexual incidents. After the first time, the sexual activity stopped for five days. On the second occasion, the activity stopped for several months. After that brief respite, on April 23, 1986, the defendant forced the victim to perform oral sex on him. That day, the victim went to school and told the principal about the defendant's actions. She was then taken out of the home. Later, her stepbrothers, P and G, ran away or left home.

Both P and G corroborated and supported many of the accusations made by the victim. When P was 12 or 13 he was called into a bedroom by the appellant who was in bed with the victim, both were naked. The appellant told P to take his clothes off and join them. The following testimony revealed:

Q. Now, why is it that you didn't refuse?

A. I didn't know what the reciprocations of refusing would be. My father can be very violent at times.

Q. What do you mean by "he can be very violent?" Toward you?

A. Yes.

Q. And what do you mean by that? What did he do to you?

A. He could get very physical as far as throwing punches or throwing things at people.

Q. Were you ever struck by him?

A. Yes, I was.

Q. How often?

A. Numerous times.

Q. Were you ever injured by those hits?

A. Mostly just bloodied lips, bloodied nose, that basically was it. No major injuries.

Q. Would you call what he did to you strict discipline, or would you call it beating?

MR. BROWN (Defense Counsel): Judge, I will object to the form of the question.

A. A beating.

THE COURT: Overruled.

Q. (By Ms. Fischgrund) (Assistant Prosecutor) You would call it a beating?

A. Yes, I would.

THE COURT: I didn't hear you. What was the answer?

A. Yes, I would.

Q. (By Ms. Fischgrund) Were you ever knocked down?

A. Yes.

G confirmed that at times the defendant hit P. He testified on cross-examination of playing "sex games" with the victim for fear the appellant "might beat me around." At the appellants bidding, G had sexual intercourse with the victim starting when he was 14 and she was 12. Both boys regularly saw their father engage in intercourse and acts of sodomy with the victim.

## I.

■ The defendant's first point on appeal is the trial court improperly overruled objections to evidence of physical abuse and sexual acts by the defendant outside the dates alleged in the indictment. The information the defendant objects to can be grouped into three categories: 1) evidence of the defendant's prior sexual assaults on the victim; 2) evidence that defendant physically abused P; and 3) calling into question whether the defendant had been violent towards his wife. Sherrie was then asked if she was afraid of the defendant, to which she responded "No." Then he asked, "Hasn't he beaten you before?" Defense counsel objected to the question, and the trial judge sustained the objection and instructed the jury to disregard the question. At that point, defense counsel moved for a mistrial.

As a general rule "evidence of other crimes is not admissible to prove the criminal character of the defendant." *State v. Taylor*, 735 S.W.2d 412, 415 (Mo.App.1987). The Missouri Supreme Court wrote:

It is also established that although proof of commission of separate crimes is generally not admissible, such proof is admissible if it " 'has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial * * *.' 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' "

*State v. Wing*, 455 S.W.2d 457, 464 (Mo. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971) (citations omitted).

In *State v. Taylor, supra,* at 416 the court recognized that some jurisdictions take a more liberal judicial attitude in admitting evidence of prior and subsequent proscribed sexual conduct, "the most frequently assigned basis for the admission of other sex crimes is that such evidence falls within one of the five categories quoted from *Wing*, that being a common scheme or plan." For example, in *State v. Graham*, 641 S.W.2d 102, 105 (Mo. banc 1982), evidence of prior acts of statutory rape between the defendant and the victim was held admissible to prove motive; the satisfaction of the defendant's sexual desire for the victim. *State v. Taylor, supra,* at 415. *See also State v. Lingle*, 759 S.W.2d 638, 641 (Mo.App.1988).

In *State v. V___ C___,* 734 S.W.2d 837 (Mo.App.1987), the court was confronted by the question of whether the defendant's daughter should have been allowed to testify as to the history of sexual and physical abuse inflicted on her by the defendant. The actions of the appellant in *V___ v. C___,* are chillingly similar to those of the defendant in this case. In *V___ v. C___* defendant was charged with committing sodomy upon his son. The court found that evidence of actions by the defendant against his daughter was admissible to show a common scheme or plan of forcing his children "to submit to his sexual demands through intimidation and fear of physical harm." *Id.* at 845.

The holding of *State v. V___ v. C___* is not only dispositive of the defendant's point on appeal concerning his past sexual conduct with the victim, but is also dispositive of the point of error concerning the defendant's violent acts towards P. Those acts of violence worked to intimidate the children. "Such evidence demonstrated the defendant was physically capable of inflicting pain ..." and that he did so on at least one occasion. *Id.*

In any event, the defendant himself offered evidence that he hit P. During the direct examination, Sherrie was asked whether she ever saw "anything where he [defendant] disabled anybody or put them in the hospital or hit them so hard they were kept out of school." Sherrie responded: "There was only one time Paul [defendant] hit [P] and his ring caught him up here in the head and [P] had to have stitches ..." The defendant even stated during direct examination that he had smacked P. As stated in *State v. Schwendt*, 645 S.W.2d 385, 387 (Mo.App. 1983), "[d]efendant cannot be prejudiced by allegedly inadmissible evidence if he offers evidence to the same effect as the challenged evidence." *See also, State v. Taylor, supra,* 739 S.W.2d at 223.

■ During her cross-examination the state sought to establish that Sherrie Osterloh was afraid of her husband:

Q: The truth of the matter is that the person you couldn't control was this defendant, isn't that right?

A: That's not true.

Q: He was the one out of control at your household, isn't that correct?

A: He was out of control on occasion.

Q: He is a big man, isn't he? Wouldn't you agree with me on that?

A: Yes.

Q: And, in fact, you are afraid of him, aren't you?

A: No, I'm not.

Q: Hasn't he beaten you before?

Defense counsel then objected to the line of questioning and asked for a mistrial. The trial judge sustained the objection as to the beatings and assaults because he felt that could constitute another crime and it was of no probative value, but denied declaring mistrial. On this subpoint the defendant claims error in not granting a mistrial.

The state then examined the defendant.

Q: The truth of the matter is, you had a terrible temper at that household and you yelled at those kids and screamed at them, and Sherrie was too afraid to stop you from doing those things; isn't that correct?

A: No.

Q: Sherrie was afraid of you, wasn't she?

A: No, she was not.

Q: You were violent toward her, weren't you?

A: No, I was not.

Defense counsel then objected to this line of questioning. The trial judge stated: "He answered the question that he wasn't violent towards her, and I don't want you to go into that area any further." At that point, defense counsel moved for a mistrial claiming that evidence was introduced of crimes that the defendant was not charged with. The trial judge responded: "There is no evidence of that. He's indicated that he wasn't, but the objection for any further testimony along this line is sustained, and the motion for a mistrial is overruled."

"A trial court is vested with broad discretion in its control of cross-examination," and "[g]reat latitude is allowed in the cross-examination of a witness with respect to credibility." *State v. Leisure,* 749 S.W.2d 366, 378 (Mo. banc 1988). The defendant, relying on *State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979), insists that the questions posed to he and his wife constituted reversible error; the questions "allowed the jury to draw the inference that the appellant [defendant] was guilty of crimes not charged."

*State v. Dunn, supra,* concerned the propriety of asking the *defendant* on cross-examination whether he has *committed* a particular crime as contrasted to whether he has been *convicted* of a particular crime. The court decided that "a defen-

dant testifying in his own defense may, as a general proposition, be impeached the same as any other witness, nevertheless, a court should, on objection being made, limit certain cross-examination of a defendant where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him." *Id.* at 653. The fear is that questions of specific detailed acts posed to a defendant can bring about substantial prejudice even though the answers are in the negative. *Id.* In *Dunn, supra,* the court was concerned with alleged prior acts of misconduct, particularly because of the way the details were stated and the acts were somewhat similar to the case on trial. This is not such a situation. The questions posed to the defendant, as well as those questions posed to his wife, were purely collateral in nature and related to the credibility of the witnesses. As such, the trial court did not abuse it discretion in refusing to grant a mistrial on this matter or anything stated in this first point. *State v. Alexander,* 729 S.W.2d 467, 468 (Mo. banc 1986); *State v. Humphrey,* 723 S.W.2d 427, 430 (Mo.App. 1986). The point is denied.

### II.

In his other point the defendant complains the trial court should have allowed evidence of the victim's prior sexual conduct. He wanted to introduce into evidence testimony by her brother, R, concerning "sexual games" involving the victim, G and several of their friends. During one such game, the victim supposedly put her mouth on one of the participant's penis.

The trial court properly excluded that evidence. Missouri's rape shield statute is found at § 491.015, RSMo 1986. That section contains a presumption that evidence of a victim's prior sexual conduct is irrelevant. The exceptions to the presumption, listed below, retain the principle that in limited circumstances prior sexual conduct may be relevant. *State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982). The defendant here relies on exception (3):

1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is admissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

As conceded by the defendant, this exception has been narrowly construed. As stated in *State v. Sherman,* 637 S.W.2d 704, 706 (Mo. banc 1982):

Generally, acts, statements, occurrences and the circumstances forming part of the main transaction may be shown in evidence under the *res gestae* rule where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue ... The express "res gestae" includes "[t]hings done, or ... the facts of the transaction; ... the surrounding facts of a transaction explanatory of an act or showing a motive for acting; ... matters incidental to a main

fact and explanatory of it, including acts and words which are so closely connected with a main fact as will constitute a part of it, and without a knowledge of which the main fact might not be properly understood." (citations omitted).

The defendant's mere statement the "sex games" happened "around the time of the charged offenses" and his belief the evidence "provides a background for understanding the main issue," is not enough to require a ruling different from that of the trial judge.

### III.

The defendant also claims error in that his Rule 29.15 motion was denied without an evidentiary hearing. The defendant asserted that trial counsel was ineffective in: 1) that he failed to move *in limine* to exclude evidence of nudity in the home; 2) that he failed to adequately consult with the defendant; 3) that he failed to depose of two of the state's witnesses, and to subpoena work and counseling records.

■ To be entitled to an evidentiary hearing on a postconviction relief motion, the movant must allege facts, not conclusions, which, if true, would warrant relief; the allegations of ineffective assistance must not be refuted by the record; and the matter complained of must have resulted in prejudice to the movant's defense. *Henderson v. State*, 767 S.W.2d 566 (Mo. App.1988).

■ The defendant asserts that allowing evidence regarding his practice of nudity was prejudicial due to its inflammatory nature. The trial court in dealing with the nudity issue wrote that any such motion would have been frivolous. The court also suggested that the failure to file the motion *in limine* could be considered trial strategy, *citing Mahaney v. State*, 660 S.W.2d 774 (Mo.App.1983). Yet, the trial court gave no indication as to how the attorney's action could be viewed as trial strategy. *See Mountjoy v. Jones*, 708 F.Supp. 1540 (W.D.Mo.1989). In any event, given the record which reveals oral sodomy when the girl was 5 until 11, continued intercourse of the father with the victim, the father's lewd language and other conduct, any showing of prejudice arising out of the defendant going around the house unclothed, would be impossible.

■ The point of entitlement to an evidentiary hearing on his claim that consultation between he and his attorney was inadequate is equally without merit. The trial court disposed of this allegation by stating that "counsel asked him the day of trial if he was ready to go and he told defense counsel that he wanted to get it over with even though his counsel told him if he were not ready, they could ask for a continuance." That conversation was not reflected by the record. Nevertheless, the judgment will be upheld on other grounds.

In *Atkins v. State*, 741 S.W.2d 729 (Mo. App.1987), the movant alleged that his counsel met with him only once before trial, and as a result he was prejudiced. The court held that "[t]he fact that counsel spent a short time in interviewing his client does not in and of itself show inadequacy of counsel." *Id.* at 731. *State v. Young*, 488 S.W.2d 221, 223 (Mo.App.1973). Here, the movant met with counsel on three occasions. Yet, the movant claims that the insufficient consultation was prejudicial in that "testimonial and physical evidence was not produced to corroborate appellant's [defendant's] testimony." The defendant, however, fails to identify the nature of the evidence that was not produced. *Tritico v. State*, 767 S.W.2d 563, 564 (Mo.App.1988).

■ Finally, the defendant claims that he was entitled to an evidentiary hearing with respect to his claim that counsel was ineffective in not deposing his two sons. The defendant asserts that if the children had been deposed it would have been discovered that the witnesses did not live in the family home during the time some of the acts against the stepdaughter were committed. Yet, his sons testified that they were at home during some of the crimes. Even if counsel was ineffective, there was no prejudice. The judgment of

conviction is affirmed. The judgment denying relief under Rule 29.15 is affirmed.