**STATE of Missouri, Respondent,**

v.

**Michael LACHTERMAN, Appellant.**

No. 55615.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 28, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 23, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Irl B. Baris, St. Louis, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant appeals his conviction on two counts of sodomy of a minor boy in violation of § 566.060 [1] and sentence as a prior and persistent offender under § 558.016 and 558.018 to two consecutive thirty-year sentences.

On April 17, 1987, Lonnie, then eleven years old, introduced defendant to Shaun, then nine years old, and his cousin Gary, then ten years old. Shaun, Gary, and Lonnie got into defendant's car together at a Kroger's lot. They were joined by Junior and Jerry. Junior, Jerry, and Lonnie were let off at a movie theater. Defendant drove Shaun and Gary around and then parked in a school parking area. After getting out of the car, Gary climbed on a roof and defendant and Shaun descended a ramp into a basement area where defen-

dant sodomized Shaun. Defendant returned Shaun and Gary to the Kroger's lot, gave Shaun two twenty dollar bills, and let the boys out.

On April 18, 1987, defendant again picked up Shaun and Gary at the Kroger's lot. Lonnie, Junior, and Jerry joined them in the car but were dropped off at Sears. Defendant drove Shaun and Gary to the zoo, to a shopping area, and then to his house where he sodomized both Gary and Shaun. Another man arrived at defendant's home during this period. When defendant returned the boys to the Kroger's lot he gave forty dollars to each boy but yanked the bills away after he saw Gary's mother.

An indictment issued December 1, 1987 charged defendant with two counts of sodomy in violation of § 566.060, punishable under § 558.011.1(2), in that defendant had deviate sexual intercourse in St. Louis City with Shaun on April 17, 1987. The second count contained identical language. On January 7, 1988, a substitute information in lieu of indictment was filed which added provisions that defendant was a prior and persistent sexual offender under § 558.016 and § 558.018.

A jury found defendant guilty of both counts on August 10, 1988. Defendant was sentenced on each count to consecutive terms of thirty years without probation or parole to run concurrently with sentences imposed in St. Louis County. Defendant filed a timely appeal.

CONTINUANCE

In his first point, defendant contends the trial court erred when it refused to grant his August 8, 1988 motion for a continuance to locate a defense witness, the man who had been at the house on April 18. Defendant asserted this witness would corroborate his testimony that the boys had been sodomized for money on April 17 by someone else.

Rule 24.10 regulates a motion for continuance due to an absent witness. A trial court's ruling on a motion for continu-

---

**1.** All statutory references are to RSMo. (1986) unless otherwise specified.

ance will not be reversed on appeal unless the proponent makes a strong showing that the court clearly abused its discretion. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert.* denied 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986); *State v. Brown*, 762 S.W.2d 471, 475 (Mo.App.1988). In ruling on the motion, the trial court may consider the probability that the witness will not be found. *State v. Wade*, 711 S.W.2d 523, 531 (Mo.App.1986). The trial court does not abuse its discretion if a continuance probably would not result in the presence of the witness at trial. *State v. Leigh*, 621 S.W.2d 515, 517 (Mo.App. 1981).

■ Trial was originally set for February 16, 1988. By the time the trial court denied a continuance on August 8, 1988, it had already granted three defense motions for continuance: February 15, 1988, April 14, 1988, and July 5, 1988. In view of the efforts that had been undertaken to find the witness, including a search by a private investigator, the trial court could reasonably conclude the missing witness would not be found. The trial court did not abuse its discretion when it denied a fourth continuance.

### SEARCH WARRANT

Defendant's second point asserts the trial court erred by admitting into evidence exhibits seized as a result of a search warrant unconstitutionally broad in its scope and issued without probable cause. U.S. Const. amend. IV; Mo. Const. art. 1, § 15.

"A warrant may be issued to search for and seize ... any of the following: [p]roperty, article, material, or substance that constitutes evidence of the commission of a criminal offense." § 542.271.1(1) Section 542.276 sets out the procedure, form, and contents required for a valid application, affidavit, and search warrant.

■ A judge must first determine that probable cause exists, *State v. Johnson*, 677 S.W.2d 330, 332 (Mo.App.1984), from the totality of the circumstances. *State v. Gardner*, 741 S.W.2d 1 (Mo. banc), *cert.* denied, 486 U.S. 1025, 108 S.Ct. 2001, 100

L.Ed.2d 232 (1987) (citing the test enunciated by the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 545 (1983)):

> The task of the issuing magistrate is simply to make a practical, common sense decision whether given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gardner*, 741 S.W.2d at 7; *State v. Holland*, 781 S.W.2d 808, 812 (Mo.App.1989).

■ Given all the circumstances in this case, we have no hesitancy in finding a substantial basis for the conclusion of the associate circuit judge that probable cause existed for the issuance of the search warrant. "A substantial basis for believing hearsay is established if the affidavit shows that the informant gleaned the information through personal observation and if the informant's statement are corroborated through other sources." *State v. Ambrosio*, 632 S.W.2d 262, 265 (Mo.App.1982). Here, the affidavit supporting the application was based upon the personal observations of not one but two of defendant's victims. That they were victims rather than mere uninvolved informants further reduces the concern over reliance upon a reckless or prevaricating tale. *Plant v. State*, 781 S.W.2d 245, 246–47 (Mo.App. 1989).

We detect considerably more substance in defendant's argument that the warrant, authorizing a search for and the seizure of "pornographic material, controlled substances, and instrumentalities of the crime of sodomy" lacks sufficient detail and particularity.

A search warrant must "[i]dentify the property, article, material, substance ... to be searched for and seized, in sufficient detail and particularity that the officer executing the warrant can readily ascertain

it[,]" § 542.276.6(4), or be deemed invalid. § 542.276.10(5). A "search warrant must leave nothing to the discretion of the officers who execute it, but rather must contain a clear command." *State v. Munson*, 714 S.W.2d 515, 523 (Mo. banc 1986), citing *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). A court reviewing the validity of a search warrant must consider "whether the items were sufficiently described so that an exercise of judgment respecting the items to be seized is not arbitrary ... and left to the caprice of the police conducting the search." *State v. Flauaus*, 515 S.W.2d 873, 877 (Mo.App. 1974).

■ The phrase "instrumentalities of the crime of sodomy", rather than constituting a sufficiently particularized description of property subject to seizure, opens the door to the exercise of unfettered discretion on the part of the officers executing the warrant. Although we readily concede our lack of expertise in the subject, we read the State's suggestion that the phrase encompasses devices which might be used by a sodomist for sexual gratification as constituting an overly broad generalization limited only by stretches of individual imagination. The seizure in this case of such objects as women's undergarments and children's size tennis shoes demonstrates the breadth of the officers' interpretation of the warrant's language.

■ We find a similar deficiency in the term "pornographic material." As was noted in *State v. Watson*, 715 S.W.2d 277 (Mo.App.1986), the use of a generic term to describe the subject matter of a search warrant does not cause the warrant to be invalid per se. *Id.* at 280. However, the validity of such a warrant generally depends upon the existence of "objective, articulated standards" by which the officers can distinguish between those items subject to seizure and those that are not, *id*, quoting from *U.S. v. Pollock*, 726 F.2d 1456, 1466 (9th Cir.1984), and circumstances do not permit the officers to provide a more detailed and specific description. *State v. Johnson*, 677 S.W.2d 330,

331 (Mo.App.1984). Neither of these conditions is present here.

In view of the debate which has persisted in our judicial system for decades and in our society for centuries over what is and what is not pornographic, that adjective can hardly be said to establish an objective, articulated standard. What one searching officer may view as pornographic another may consider a work of art. This element of subjectivity caused the quashing of a search warrant directing the seizure of "obscene, lewd, licentious, indecent or lacivious" articles in *In re Search Warrant of Property, etc.*, 369 S.W.2d 155, 158 (Mo. 1963) because of the absence of any directions in the exercise of discretion as to what constituted an obscene article. *See also, Marcus v. Search Warrants of Property, etc.*, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

The State argues that it would have been impossible for the officers to learn from the children the titles of the magazines in order to be more specific in the application for the warrant. However, it was obviously within the knowledge and ability of the officers to apply for a warrant to search for and seize "photographs, magazines and videotapes depicting children engaged in sexual conduct." The generalization "pornographic materials," fails to describe the property "in sufficient detail and particularity" as required by § 542.276.1(3).

■ We do not view the term "controlled substances" with similar disfavor. A controlled substance is, by definition, a substance listed upon the schedules contained within Chapter 195 RSMo. (1986). No discretion is left to the searching officer except to search for and seize substances so listed. As stated in *Munson*, the requirement of specificity "does not fail simply because a person with specialized knowledge may have to identify the listed articles." *State v. Munson, supra*, 714 S.W.2d at 523.

Although defendant places great reliance upon the language of the *Munson* opinion in arguing that the term "controlled substances" lacks the required particularization for a valid search warrant, we find

*Munson* readily distinguishable. The challenged search warrant in *Munson* authorized the search for and seizure of "drug paraphernalia within the meaning of RSMo. 195.010(11)." A copy of that statute was attached to and incorporated by reference in the warrant. The Supreme Court stated that except for the attachment of the statute the warrant would have been invalid. *Id.* The attached statute defined drug paraphernalia to include such commonplace items as "blender, banks, containers, spoons and mixing devices ... capsules, balloons, envelopes ..." if intended or designed for compounding, packaging or concealing controlled substances. The statute further authorized consideration of direct and circumstantial evidence of intent of the one in control of such commonplace objects in order to determine if they were drug paraphernalia. The court acknowledged the propriety of the defendant's argument that determination of intent introduced an impermissible element of discretion but discounted this factor because the statute "specifically lists the very items on which the charges focus." *Id.* The same is true here. "Controlled substances" is a term limited by statutory definition, and no resort to the intent of the possessor is necessary in order to determine that such a substance is subject to seizure. It is either listed in the statute or it is not. We follow the court's admonition in *Munson* by acknowledging that the form of the warrant is not to be commended and that it would have been preferable for the warrant to have utilized the specific substance, marijuana, identified in the affidavit. However, as this court ruled in *State v. Holland, supra,* 781 S.W.2d at 814, particularity in a generalized search warrant may, in some cases, be supplied by reference to the application and the supporting affidavits upon which the warrant was issued. Accordingly, we find the search warrant validly authorized the entry into defendant's premises to search for and seize controlled substances. It follows that the seizure of other items which constitute evidence of criminal activities and which are found during the legitimate search for controlled substances are also subject to seizure. *Id.*

## ADMISSION OF EVIDENCE

Property seized by the officers during the search included "kiddie pornographic magazine", sex books, video tapes, photographs of children, women's undergarments, child-sized G.I. Joe tennis shoes, clippings of newspaper articles involving sexual incidents, hand-rolled cigarettes, a toy motorcycle, and cash. Over defendant's repeated and continuing objection, all of these articles except the women's undergarments and the hand-rolled cigarettes were admitted into evidence and shown to the jury. Defendant objects on the grounds that the articles are irrelevant to the issue of his guilt or innocence of the acts allegedly committed on April 17, 1987, in the City of St. Louis. In addition, he claims the videotape shown to the jury as well as oral testimony relating to his sodomizing of other boys on different dates in St. Louis County were erroneously admitted over his objection, because they constituted evidence of other crimes. In overruling defendant's objections the trial court accepted the argument of the assistant circuit attorney that the evidence was admissible under the common scheme or plan exception to the rule excluding evidence of uncharged crimes and to show motive.

Evidence is relevant if it tends to prove or disprove a fact in issue or if it corroborates evidence that is relevant and bears on a principal issue. *State v. Jackson,* 738 S.W.2d 510, 512, (Mo.App.1987). The issue in this case is whether or not defendant committed the acts of sodomy upon Shaun on April 17, 1987, in the City of St. Louis. Does defendant's possession of magazines, photographs, and newspaper articles pertaining to sexual acts with children, tend to prove or disprove this issue? Is the evidence that defendant committed sodomy with Shaun and other children at different times and places relevant to this issue and is such evidence admissible despite the rule excluding evidence of uncharged crimes? We answer all of these questions in the affirmative.

In explanation of our answer, a brief review of the increasingly liberal attitude

toward the admission of evidence regarding the sexual conduct of defendants charged with sexual abuse of children is in order. In *State v. Atkinson*, 285 S.W.2d 563 (Mo.1955), a conviction of child molestation was reversed because of the admission of testimony by a boy other than a victim of the charged crime that defendant had done the same thing to him. This same defendant was later convicted of sodomy upon another 15–year old boy. This conviction was also reversed because of the testimony of two other boys about the defendant's sodomous relations with them. *State v. Atkinson*, 293 S.W.2d 941 (Mo. 1956). The court, although recognizing the appearance of some merit to the argument, expressly rejected the State's theory that "[s]o strange and unusual are the acts of homosexuality, so far outside the ordinary pattern of male conduct, that a man who has proven to have committed the act with one or more persons would certainly be deemed to be much more likely to have committed the act with yet another person". *Id.* at 943. Relying upon the *Atkinson* cases, defendant here argues that the Missouri Supreme Court has come down squarely against the admission of evidence showing a defendant's propensity or proclivity to engage in a particular type of illicit behavior including such aberrant conduct as sexual abuse of children. Accordingly, defendant argues, the admission into evidence of the magazines, photographs and newspaper articles, none of which were displayed to the victim, and which could have no relevance other than to show an interest on the part of defendant in sexual conduct with children, was error. Additionally, the videotape and the testimony regarding his conduct with other boys was erroneously admitted because this evidence does not fit into any of the recognized exceptions to the rule against the admission of evidence of uncharged crimes.

In *State v. Taylor*, 735 S.W.2d 412 (Mo. App.1987) the Honorable Almon H. Maus authored an opinion which thoroughly explores decisions from other states and Missouri, and which refers to authoritative texts and articles regarding what Judge Maus appropriately refers to as "the de-

praved sexual instincts doctrine". *Id.* at 417. In describing this concept Judge Maus adopts the following quotation from *State v. McDaniel*, 80 Ariz. 381, 298 P.2d 798, 802–03 (1956);

> Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion. The importance of establishing this fact far outweighs the prejudicial possibility that the jury might convict for general rather than specific criminality. Even granting the general rule of inadmissibility of evidence of independent crimes to prove the offense charged, many courts recognize a limited exception in the area of sex crimes to prove the nature of the accused's specific emotional propensity.

*Taylor*, 735 S.W.2d at 415.

A review of decisions in Missouri courts in cases involving sexual abuse of children reveals that Missouri has adopted this concept in fact, if not by name, in such cases. Although often enunciating the rule against the admission of evidence of other crimes for purposes of showing propensity, these decisions find such evidence admissible by characterizing it as fitting within one or another of the exceptions to the general rule. *See* e.g. *State v. Kerr*, 767 S.W.2d 344, 345 (Mo.App.1989). Analysis of the decisions, however, discloses that the purpose for which the exception was created is clearly not the purpose purportedly justifying the admission of the evidence.

We have long recognized that evidence of a defendant's commission of an uncharged crime has logical relevance for the purpose of proving identity, motive, intent, absence of mistake or accident or as a part of a common scheme or plan. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (Mo. banc 1954). One of these exceptions frequently resorted to in child sex abuse cases is that evidence of other sexual conduct with the same victim is relevant to show the defendant's motive, satisfaction of sex-

ual desire for that child. *State v. Christeson*, 780 S.W.2d 119, 123 (Mo.App.1989); *State v. Osterloh*, 773 S.W.2d 213, 216 (Mo. App.1989); *State v. Gunter*, 715 S.W.2d 576, 578 (Mo.App.1986).

Another frequently used exception in such cases is that other acts of sexual abuse of other children is admissible as a part of a common scheme or plan. *State v. Fraction*, 782 S.W.2d 764, 768 (Mo.App. 1989); *State v. Christeson, supra; State v. Osterloh, supra; State v. Kerr, supra; State v. V____ C____*, 734 S.W.2d 837, 843 (Mo.App.1987). These and other cases using the common scheme or plan exception as a means of demonstrating the relevance of uncharged acts of sexual abuse of children equate similarity of conduct with common scheme. This, we submit, is a distortion of the common scheme or plan exception. Traditionally, this exception was established in order to justify the admission of evidence that the defendant committed an uncharged crime as a part of a chain or series of events in which the charged offense was one of a sequence of acts each committed for the purpose of facilitating the others. *See, State v. Courter*, 793 S.W.2d 386, 388 (Mo.App. 1990). For example: the escape from jail and the theft of an automobile would be admissible in the homicide case arising from the death of a pedestrian struck by the automobile during the escape.

■ Similarity of conduct, the so-called *modus operandi* exception is based upon its relevance toward proving the issue of identification. The fact that the same crime was committed in the same fashion with the same specific details leads logically to the conclusion that the two crimes were committed by the same person. This exception is usually limited to conduct of such an unusual or distinctive nature as to point almost unerringly to a single individual. Thus, similarity of conduct involved in the commission of separate crimes is not properly characterized as falling within the common scheme or plan exception to the general rule.

One other exception to the rule against admitting evidence of uncharged crime

needs mention. Although not listed in *State v. Reese, supra*, we have come to recognize the relevance of evidence of a defendant's commission of a crime unrelated to the charged offense when necessary to provide a complete and coherent picture of the totality of the circumstances which tend to establish defendant's guilt. In *State v. Wilson*, 755 S.W.2d 707 (Mo. App.1988) this court ruled that evidence of the defendant's commission of a burglary in Santa Monica, California, was properly admitted during his trial for a murder committed in Maplewood, Missouri. While in custody in California on the burglary charge, the police learned the defendant was a suspect in the Missouri murder. The California police interrogated him and obtained a detailed confession of the homicide. In addition, the tread of defendant's tennis shoe matched a foot print in the mud at the scene of the burglary and also a bloody footprint at the scene of the murder. Thus, the investigation of one crime was so inseparably connected with the investigation of another crime that proof of one necessarily involved proof of the other. *Id.* at 710. *See also, State v. Mantia*, 748 S.W.2d 785 (Mo.App.1988); *State v. Churchir*, 658 S.W.2d 35 (Mo.App.1983).

Although this "complete picture" exception to the general rule seldom has application in child sexual abuse cases, it does demonstrate that the five exceptions listed in *Reese*, and constantly repeated in later decisions, are not exclusive of other exceptions. The crucial question is one of relevance—does proof that the defendant committed another crime logically tend to prove he committed the charged offense? Although it cannot be denied that the admission of such evidence may be prejudicial because it may result in a conviction founded upon crimes other than the charged offense, "relevance, not prejudice, is the touchstone of due process and ... the question of whether the prejudicial effect outweighs its probative value rests within the sound discretion of the trial court." *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982).

In cases involving sex crimes generally, and even more so in cases of child sexual abuse, courts have been markedly liberal in holding evidence of prior and subsequent sexual conduct of the defendant admissible. *See State v. Taylor, supra,* 735 S.W.2d at 416–17. However, this liberality is often accomplished through such a strained and distorted application of the recognized *Reese* exceptions that we run the danger of forcing a square peg into a round hole. For example, in this case the defendant's possession in his home of magazines and photographs depicting children engaged in sexual conduct does not fit into any of the five recognized exceptions and has no relevance other than showing the defendant possessed an interest in such activities. The prejudicial effect of the evidence of defendant's sexual abuse of other boys far outweighs the probative value of such evidence toward proving identity, motive, or intent as none of these was a disputed issue in the case. To say the similarity of defendant's conduct with the victim and with the others shows a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other is tantamount to saying that the defendant's scheme or plan was to fulfill his propensity, proclivity or disposition toward such deviant behavior.

It has been said that permitting evidence of similar sexual conduct with others than the victim under the common scheme or plan exception is "spurious" and a subterfuge for admitting the defendant's similar misdeeds. Imwinkelreid, *Uncharged Misconduct Evidence,* § 4:13 (1990). Professor Imwinkelreid continues:

> The courts were routinely straining and distorting the plan doctrine to rationalize the admission of evidence of the defendant's uncharged sexual misconduct. In some jurisdictions, intellectual honesty triumphed and the courts eventually acknowledged that they were recognizing a special exception to the norm prohibiting the use of the defendant's disposition as circumstantial proof of misconduct.

*Id.* at § 4:14.

Although we do not espouse the caustic terminology used by Professor Imwinkel-reid, our review of the Missouri decisions compels us to acknowledge that Missouri has in fact recognized a special exception for the admission of evidence of prior and subsequent similar conduct in cases of sexual abuse of children. We have always admitted evidence of prior sexual abuse of the victim of the crime on trial, calling it relevant toward establishment of the defendant's motive. *State v. Bailey,* 190 Mo. 257, 88 S.W. 733 (1905); *State v. Osterloh, supra,* 773 S.W.2d at 216. The motive is obviously to satisfy a deviate sexual instinct, proclivity, propensity or disposition with this victim. Under the guise of the common scheme or plan exception, we admit evidence of defendant's sexual misconduct with the victim's siblings, *State v. Christeson, supra,* 780 S.W.2d at 122, and with other children in his custody and control. *State v. Muthofer,* 731 S.W.2d 504 (Mo.App.1987); *State v. Koster,* 684 S.W.2d 488 (Mo.App.1984). The "plan" is to fulfill the deviate sexual instinct, proclivity, propensity, or disposition to engage in sexual conduct with children. Thus, through a distorted application of the established exceptions to the general rule, we are today accepting the identical argument expressly rejected by the Supreme Court in the Atkinson cases forty-five years ago.

We view such conduct as so unnatural and depraved that regardless of the relationship or similarity of status between the victim and other children subjected to like sexual abuse by the defendant, evidence that the defendant engaged in similar acts of sexual abuse of children of the same sex as the victim near in time to the acts charged tends to prove the defendant's guilt of the crime on trial. Evidence of repeated acts of sexual abuse of children demonstrates, per se, a propensity for sexual aberration and a depraved sexual instinct and should be recognized as an additional, distinct exception to the rule against the admission of evidence of uncharged crimes.

We are not unmindful of the prejudicial impact upon a jury of evidence that a de-

fendant has committed other crimes. For that reason we emphasize that what we say here should be narrowly construed. It is not our intention to open the door for the admission of evidence of any type of sexually aberrant behavior on the part of defendant. We are aware that our colleagues in the Western District in *State v. D.A.R.*, 752 S.W.2d 910 (Mo.App.1988), where the defendant was charged with committing two acts of oral sodomy upon his nine year old daughter, approved the admission of testimony by the defendant's former paramour that she consensually engaged in oral sex with the defendant. The court held such testimony admissible as "tend[ing] to corroborate the child's testimony that the defendant made her perform oral sex on him by indicating a disposition on the part of defendant for that type of sexual activity." *Id.* at 913. We recognize the prejudicial effect of evidence of consensual conduct with an adult is slight, but we also find highly questionable the relevance and probative value of sexual conduct with an adult in a case involving sexual abuse of a child. We also point out that remoteness in time of even similar sexual misconduct with children may destroy the probative value of such evidence. *See, State v. Courter, supra,* 793 S.W.2d at 390.

Consequently, we limit our finding of relevance and probative value to other acts of sexual abuse of children of the same sex as the victim occurring near in time to the acts charged. It is the recurrent and continuing penchant for engaging in sex with children that demonstrates such deviance and depravity as to give significance to the uncharged conduct. The trial court did not err in admitting evidence of defendant's sexual abuse of boys other than the victim or of his possession of magazines and photographs depicting children engaged in sexual conduct.

### VIDEO TAPES

In a separate point on appeal, defendant asserts trial court error in permitting the State to show to the jury the video tape of his acts of sodomy with Lonnie. Defendant argues the content of the video tape

was "so gruesome, inflammatory, and repugnant as to be shocking and prejudicial."

▮ Defendant concedes the admission of photographs and video tapes is, in the first instance, a matter addressed to the sound discretion of the trial court. In exercising this discretion the court must determine whether or not the prejudicial effect of such material outweighs its probative value. If the evidence is relevant and tends to establish an essential element of the State's case, it need not be excluded merely because it is inflammatory or because of oral testimony describing the same facts. *State v. Murray,* 744 S.W.2d 762, 772 (Mo. banc 1988). The very fact that the defendant made and retained a video tape of himself in the act of sodomizing a child is certainly probative of his deviant sexual instincts, a subject we have found above to have independent significance toward proving child sexual abuse. Moreover, certain similarities between the defendant's acts and statements as described by Shaun in the April 17 school yard incident, and as shown and heard in the video tape with Lonnie tend to disprove defendant's testimony that Shaun said one "Mike the Nark" had committed the April 17 offense.

▮ We do not dispute defendant's characterization of the video tape as "repugnant and prejudicial". That fact alone, however, does not require its exclusion. *State v. Black,* 748 S.W.2d 184, 187 (Mo. App.1988). In view of all the circumstances, including defendant's admissions of sexual abuse of young boys over a period of years, and that he made and retained the video tape of his sexual activities with Lonnie, we cannot say the prejudicial effect of showing the tape to the jury so outweighed its relevance as to constitute an abuse of trial court discretion or to deprive the defendant of a fair trial.

### MEDICAL TESTIMONY

▮ Defendant next charges trial court error in excluding the testimony of two psychologists, a psychiatrist and a social worker who examined defendant prior to trial. Defendant offered to prove through these witnesses that he had freely admitted

his guilt of the charges in St. Louis County based upon incidents occurring in his home, but that he had consistently denied the events allegedly occurring in the City of St. Louis on April 17. He argues that because these statements were taken as a part of the defendant's history in connection with mental examinations they should be admissible as an exception to the rule against hearsay. We disagree.

Statements made in connection with a mental or physical examination are said to be admissible, even though they constitute hearsay, provided such statements constitute an essential element of the doctor's diagnosis and furnish a basis for treatment. *State v. Moore*, 721 S.W.2d 141, 143 (Mo.App.1986). Defendant's admissions to the doctor that he repeatedly sodomized boys may well fall within this classification. His denial of such conduct, however, can hardly be seen as forming any basis for diagnosis and treatment. The excluded evidence was nothing more than the self-serving exculpatory statements by a defendant offered for no reason other than to bolster his in-court testimony. The court did not err in excluding this evidence. *State v. Cooksey*, 787 S.W.2d 324, 328 (Mo.App. 1990).

## SUBMISSIBLE CASE AND INSTRUCTIONS

Defendant's sixth point on appeal consists of a conglomeration of procedural matters. In a single point defendant asserts insufficiency of the evidence, variance between the pleadings and the evidence, and improper jury instructions.

 The first of this medley of complaints appears to be based upon the failure of the victim, eleven years old at the time of the trial, to specifically identify body parts. Shaun said defendant touched him "down below" with his hands and mouth. "Down below" meant to him the part of his body where he went to the bathroom. He also testified that the defendant made him touch the defendant "down below" with his hand and to "jack him off." We find this testimony sufficient to support the submission to the jury of one count of oral sodomy and one count of manual sodomy. In a prosecution of sodomy of a child, the name by which body parts are identified is a "collateral matter" *State v. Webb*, 737 S.W.2d 197, 200 (Mo. App.1987), of no material significance under all the evidence in the case. Despite Shaun's lack of specificity it is clear he was describing the defendant touching his penis with his mouth and requiring him to touch defendant's penis with his hand.

 Next defendant argues his conviction under Count II should be reversed because of a variance between the evidence and the State's response to his motion for a bill of particulars. The indictment charged defendant with two offenses of sodomy upon Shaun. The two counts were stated in identical language. Defendant filed a motion to dismiss, a motion to elect, and a motion for a bill of particulars, none of which were presented to the court for ruling prior to the commencement of the trial. This failure constituted a waiver of the motions under Rule 24.04(b)(2). *State v. Raines*, 748 S.W.2d 865 (Mo.App.1988).

 On the second day of trial the judge noticed the unruled motions. The court denied the motion to dismiss and the motion to elect because the assistant circuit attorney in his opening statement had stated Count I involved defendant's placing his mouth on Shaun's penis and Count II involved the placing of Shaun's mouth on defendant's penis. The trial court observed that because of the detailed opening statement of the assistant circuit attorney the motion for bill of particulars was moot and counsel for defendant agreed. Count II was submitted to the jury under an instruction which required the jury to find that defendant had Shaun touch defendant's penis with Shaun's hand. This instruction conformed to Shaun's testimony. Defendant argues that because Shaun's testimony and the instruction failed to conform with the opening statement of the assistant circuit attorney that both counts involved acts of oral sodomy, there is a fatal variance from the response to the bill of particulars.

An argument virtually identical to this contention was rejected in *State v. Doolen*, 759 S.W.2d 383 (Mo.App.1988). In *Doolen*, the State's response to defendant's motion for a bill of particulars specified that the sexual conduct charged consisted of the defendant's touching the victim's genitals. The evidence showed that the defendant had rubbed his penis against the victim. The court held the variance was not prejudicial because it did not hamper defendant's ability to prepare and present his defense nor was it material to his defense that the incident never happened. *Id.* at 385.

Accordingly, even if we were to assume that the conversation in chambers between the trial court and counsel was sufficient to have resurrected the waived motion for a bill of particulars, no error warranting reversal of the conviction on Count II occurred. Both oral and manual deviate sexual intercourse as defined in § 566.010 when committed with the child under the age of fourteen, constitutes the crime of sodomy. § 566.060(3). Whether the sexual act involved the mouth or the hand did not affect the preparation or presentation of the defense that defendant was not with Shaun in the school yard on April 17, 1987.

■ Finally, defendant challenges the form of the verdict directing instruction on Count II because it failed to define "deviate sexual intercourse". He concedes that at the time of trial MAICR–3d 320.08.2 did not include such a definition. Nevertheless, he argues the definition should have been given to ensure the jury would not find the defendant guilty based upon a mere touching not involving the gratification of sexual desire.

In *State v. Lowe–Bey*, 807 S.W.2d 132 (Mo.App.E.D.1991), we rejected the identical argument. We noted that the form of MAICR–3d 320.08 had been changed subsequent to the trial of that case to include a required finding that the touching constituted deviate sexual intercourse and a definition of that term. We observed "[t]his required finding and definition were added in order to ensure that no person would be convicted of sodomy by reason of a touch-ing that was accidental or innocent, a possibility simply not present under the evidence of this case." *Id.* at 136. This observation is equally appropriate in this case. There can be no doubt concerning the sexual nature of the touching which occurred in response to defendant's request to "jack him off."

### SENTENCE

■ Finally, defendant challenges his sentence to a total of 60 years without probation or parole. First he argues, without citation to any authority that the State should be estopped from proceeding against him in this case as a prior and persistent offender within the framework of § 558.018. This "estoppel" is predicated upon the fact that in St. Louis County the State agreed that he could be sentenced upon his guilty pleas without reference to the persistent sexual offender statute. We are unable to discern, and defendant does not suggest, how this fact invokes any of the elements of estoppel.

■ In *Williams v. State*, 800 S.W.2d 739 (Mo. banc 1990) and *State v. Burgess*, 800 S.W.2d 743 (Mo. banc 1990), our Supreme Court ruled that § 558.026 does not mandate consecutive sentences for convictions of more than one sexual offense committed at the same time, but that the trial court retains discretion to order consecutive or concurrent sentences. In this case the trial judge stated that regardless of any statutory requirement "it's the court's own intention and desire and my own discretion that is also being used here to give consecutive sentencing." Therefore, even though the trial court expressed its opinion that the statute required consecutive sentences, it is apparent that the imposition of consecutive sentences was a matter of trial court discretion. There is no need to remand this case to the trial court for the exercise of discretion in determining whether the sentences should be concurrent or consecutive in view of this record.

■ Additionally, defendant contends the sentence to 60 years imprisonment under the facts in this case is excessive, cruel,

and unusual. His complaint should be addressed to the legislature, not to the court. The sentences are within the range of punishment prescribed by the statute. "[W]hen the punishment imposed is within the range prescribed by statute, it cannot be judged excessive by the appellate court ... [and] consecutive effect of the sentences does not constitute cruel and unusual punishment." *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980); *State v. Jackson*, 676 S.W.2d 304, 305 (Mo.App. 1984).

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.