**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Truman VOWELL, Defendant–Appellant.**

**Truman VOWELL, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 17518, 18443.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 3, 1993.

Henry B. Robertson, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Judge.

On March 12, 1991, appellant (Defendant) was convicted by a jury of sodomy pursuant to § 566.060, RSMo 1986, and was sentenced to a term of fifteen years. He appeals both from his conviction, in Case No. 17518, and from the denial of his Rule 29.15 motion, in Case No. 18443. These appeals were duly consolidated but Defendant in his brief raises no issue relating to Case No. 18443. The first of the two issues raised in this appeal is that the trial court erred in permitting testimony concerning alleged prior sexual misconduct by Defendant with someone other than the alleged victim in the instant case. Inasmuch as we must reverse the conviction on the basis of Defendant's first point, we need not discuss the second.

The victim (L.V.) was a three-year-old female at the time of the alleged offense. She was Defendant's granddaughter but had been adopted by him and his wife when her mother (Defendant's daughter) was killed. She lived with Defendant and his wife in Texas until they separated prior to their divorce. A custody dispute followed and Defendant obtained custody of L.V. in late 1989. In February 1990, Defendant and L.V. moved to Missouri and lived first with one and then the other of his daughters, Donna and Rebecca.

The evidence indicated that L.V. would often leave her bed and insist on sleeping with Defendant. As a result of suspicions of Donna and Rebecca, Donna contacted the Department of Social Services child abuse hotline. This resulted in L.V. being interviewed by a social worker. During that interview, L.V. said her daddy had done something nasty, that he "stuck his finger in her tutu, and it hurt," and further identified her vaginal and rectal areas on an anatomically correct chart as being the areas where she was touched. A physical examination by the social worker revealed that L.V.'s pubic area was abnormally enlarged. On the following day, L.V. was examined by a doctor who found that her vagina and rectum were normal, but that she had some enlargement of tissue in the pelvic area which could have been caused by a normal developmental condition or by stimulation over a long period of time.

Defendant alleges trial court error in permitting the testimony of P.H., who was then fifteen years of age. He testified that Defendant had on more than one occasion fondled his genitalia, forced him to fondle Defendant's genitalia, forced him to take Defendant's penis in his mouth, and on one occasion had tried to force his penis into the witness' anus. Defendant filed a motion in limine to exclude that testimony, which was overruled after the State argued that the testimony was admissible to show a common scheme or plan. Defendant's objection at trial when the evidence was offered was also overruled.

As a general rule, evidence of uncharged crimes, wrongs, or acts are inadmissible for the purpose of showing the propensity of the defendant to commit the crime with which he is charged. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993) (citing *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (1954)). As an exception to the general rule, evidence of prior misconduct is admissible if it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial. *Id.* Evidence of other uncharged misconduct may be admissible to prove the specific crime charged when it tends to establish: "(1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." *Id.*

When the instant case was tried, the most recent authority concerning the admissibility of evidence regarding a defendant's acts of sexual abuse towards other children was

*State v. Lachterman,* 812 S.W.2d 759 (Mo. App.1991). The *Lachterman* court held that admission of evidence of similar occurrences on the theory that it showed a common scheme or plan amounted to equating similarity of conduct with a common scheme. In doing so, it said it was "tantamount to saying that the defendant's scheme or plan was to fulfill his propensity, proclivity or disposition toward such deviant behavior." *Id.* at 768. In suggesting that this was a distortion of the common scheme or plan exception to the general rule, the Court said:

> ... Traditionally, this exception was established in order to justify the admission of evidence that the defendant committed an uncharged crime as a part of a chain or series of events in which the charged offense was one of a sequence of acts each committed for the purpose of facilitating the others.

*Id.* at 767. Rather, the court espoused another exception by saying that "[e]vidence of repeated acts of sexual abuse of children demonstrates, per se, a propensity for sexual aberration and a depraved sexual instinct and should be recognized as an additional, distinct exception to the rule against the admission of evidence of uncharged crimes." *Id.* at 768.

After the instant case was tried, the Missouri Supreme Court decided *State v. Bernard, supra,* in which the court rejected the "depraved sexual instinct" exception articulated in the *Lachterman* case. Like the *Lachterman* court, the Supreme Court in *Bernard* criticized the growing trend of admitting evidence of prior sexual misconduct with persons other than the victim under the common scheme or plan exception typified by cases such as *State v. Koster,* 684 S.W.2d 488 (Mo.App.1984). The *Bernard* court said:

> After *Koster* the focus in analyzing the common scheme or plan exception has shifted from whether the defendant committed the prior sexual conduct within the context of the activity that led to the crime charged to whether the defendant over the course of several months or years systematically engaged in similar sexual conduct with other victims under his "custody and control." ...

*State v. Bernard,* 849 S.W.2d at 15–16. The court agreed with the *Lachterman* court that admitting such evidence distorts the common scheme or plan exception to the general rule. It said:

> The common scheme or plan exception has become instead "a series of crimes theory," and the evidence of prior misconduct is admitted more to prove that the defendant had a propensity to engage in the deviant sexual behavior than to prove a common scheme or plan that connects the misconduct with the present crime.... The exception, in effect, engulfs the rule. *Koster* and its progeny incorrectly interpreted and applied the common scheme or plan exception and, in this regard, should no longer be followed.

*Id.* at 16.

In *Bernard,* the court adopted "a signature *modus operandi*/corroboration exception to the rule prohibiting evidence of prior uncharged misconduct." *Id.* at 17. The court noted that evidence of prior sexual misconduct with third parties, offered as corroboration of the victim's testimony, is probative and therefore relevant. The court said, however:

> For corroboration evidence to be of sufficiently increased probative value so as to outweigh its prejudicial effect, the evidence must be more than merely similar in nature to the sexual assault for which the defendant is charged.... Evidence of prior sexual misconduct that corroborates the testimony of the victim should be nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi.*

*Id.* at 17.

In the instant case, the State successfully argued in the trial court that P.H.'s testimony was admissible under the common scheme or plan exception to the general rule excluding evidence of other uncharged crimes. It now contends that the evidence was admissible under the "identity" exception to that rule. In support of this contention, the State argues that P.H.'s testimony was probative as to who had sodomized L.V.

■ This contention is undermined, however, by the fact that the *Bernard* court, in adopting the *modus operandi*/corroboration exception, noted that it approximates the criteria for the long-established "identity" exception to the rule. *Id.* As under the *modus operandi*/corroboration exception, mere similarity between the crime charged and the uncharged crime is insufficient to satisfy the "identity" exception. *Id.* Under *Bernard*, evidence of uncharged misconduct offered under the "identity" exception must meet the same test as that offered under the *modus operandi*/corroboration exception, i.e., the evidence of prior misconduct must be nearly identical to that charged and so unusual and distinctive as to constitute a signature of defendant's *modus operandi.* *Id.*

■ Our task becomes that of determining whether P.H.'s testimony constituted evidence which was "nearly identical to the charged crime and so unusual and distinctive as to be a signature of the defendant's *modus operandi.*" *Id.* The facts of the *Bernard* case are instructive in making this review.

*Bernard* involved allegations of sexual misconduct against a pastor. The victim was a fourteen-year-old male who attended appellant's church. According to the victim's testimony, he was taken to a motel by appellant where he was assaulted during the night by the appellant rubbing the victim's genitals with his hand and also his penis. Appellant also photographed the victim in his underwear. Upon leaving the motel, appellant encouraged the victim to take his clothes off and run around the car or walk around the car in his underwear, which the victim refused to do. The State introduced the testimony of four other youths which provided evidence that appellant had sexually assaulted them on numerous occasions and in a variety of ways. Only one type of uncharged act was found sufficiently identical, unusual and distinctive as to be admissible under the "signature *modus operandi*/corroboration" exception. That involved one of the four youths who testified that while riding in a car with appellant he observed two other boys stripped and running naked in front of the vehicle; two boys testified that appellant asked them to run naked in front of a slow-moving car; and one boy testified that appellant asked him to sit naked on a slow moving car. The *Bernard* court said:

> Appellant's conduct involving his preference for naked or partially clothed boys in motion on or around an automobile is more than merely similar in nature to the sexual assault with which appellant is charged; it operates as a "signature" of appellant's involvement in both crimes. Appellant's conduct in this respect is so unusual and distinctive as to "earmark" it as the conduct of the accused and, thus, to corroborate the testimony of the victim in the present case.

*Id.* at 19. The court held, however, that none of the other testimony from the four youths was admissible. It reasoned that "[a]lthough the conduct is similar, even nearly identical, it is not so unusual and distinctive as to be a signature of appellant's *modus operandi.*" *Id.* Concluding, the *Bernard* court said:

> The remainder of the testimony of the four witnesses is inadmissible. Some bears no similarity to the conduct with which appellant is charged in the present case. Some is insufficiently unusual or distinctive, although similar. All occurred on occasions separate from the "signature" incidents. The evidence is prejudicial, and its admission requires reversal and remand for a new trial.

*Id.* at 20.

In comparing P.H.'s testimony to the evidence concerning the alleged abuse of L.V. in the instant case, it is apparent that not only were the allegations dissimilar but they also failed to establish conduct which is so unusual and distinctive as to rise to the level of a signature of defendant. Using *Bernard* as a factual benchmark against which to test the admissibility of P.H.'s testimony, it is apparent that we have no alternative but to hold that the evidence was inadmissible and prejudicial.

We are constrained to follow the controlling decision of the Missouri Supreme Court. V.A.M.S. Const. art. 5, § 2. Accordingly, we must reverse Defendant's conviction and remand the cause for a new trial. Other courts have reached the same result. See *State v. Conley*, 1993 WL 286794 (No. 62171, E.D., August 3, 1993), *State v. Bird*, 854 S.W.2d 807 (Mo.App.1993); *State v. Phillips*, 854 S.W.2d 803 (Mo.App.1993).

Reversed and remanded.

FLANIGAN, P.J., and PREWITT, J., concur.