**STATE of Missouri, Respondent,**

v.

**William J. KITSON, Appellant.**

**No. 58182.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 10, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 9, 1991.

Application to Transfer Denied
Nov. 19, 1991.

Terry J. Flanagan, St. Louis, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

Defendant, William Kitson, appeals from his conviction by a jury of sodomy. Section 566.060 RSMo 1986. We reverse and remand.

Defendant raises six issues on appeal. One is dispositive. It centers on the admissibility of evidence of uncharged sexual conduct. We address this issue first.

Defendant was charged with "deviate sexual intercourse with [C]", defendant's son, who was about five years old at the time of the incident and seven years old at the time of trial. The incident occurred in September, 1987. According to C, he was at home with defendant one night, when Mrs. Cynthia Kitson, defendant's wife and C's mother, was away. Defendant removed C's pajamas and touched C's penis with his hand. Defendant also put his penis in C's mouth. He spread jelly on C's rectum and then licked it off. He inserted a hot dog in C's rectum, removed it and ate it. Defendant then had C perform the same acts on defendant. Defendant also "put his penis" in C's rectum. The sequence of these acts is not clear.

Defendant testified on his own behalf. On direct examination, he denied any sexual contact between himself and his son, C. On cross-examination, over defendant's objections, the prosecutor was allowed to ask defendant whether he frequently asked his wife to engage in anal intercourse and whether he ever inserted a glass tube into her vagina or into his own rectum. Defendant answered no to each question. Then, on rebuttal, the prosecutor recalled Mrs. Kitson and, over defendant's objections, asked her the same questions. She answered yes to each.

The basic issues are whether evidence of defendant's sexual conduct with his wife was inadmissible, and, if so, whether its admission was prejudicial. Our answer to both is: Yes.

■ Both parties, either expressly or tacitly, agree on the general principles governing the admissibility of uncharged misconduct evidence. In Missouri, evidence of an uncharged crime committed by a defendant is usually not admissible because that evidence may result in a conviction based upon a crime with which the defendant is not charged. *E.g. State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc 1987), *cert. denied* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d

267 (1987); *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982), *cert. denied* 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1031 (1983). The jury may use the evidence of the uncharged crime to infer the defendant has a general criminal disposition, a bad character, or a propensity or proclivity to commit the type of crime charged, which, in turn, results in the jury basing a finding of guilt on the uncharged crime. *Mallett, supra; Trimble, supra.*

 There are exceptions to this general rule, however. Evidence of an uncharged crime which has independent logical relevance to a fact in issue may be admissible, *see, e.g. State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954), if its prejudicial effect does not outweigh its probative value. *Id.; Mallett, supra* 732 S.W.2d at 534. Thus, evidence of an uncharged crime is admissible if it tends to establish motive, intent, identity, the absence of mistake or accident, or a common scheme or plan embracing the commission of two or more crimes so related that the proof of one tends to establish the other. *Mallett, supra*, 732 S.W.2d at 534; *Reese, supra* 274 S.W.2d at 305. This list of theories for establishing independent logical relevance is not exhaustive.[1]

Defendant argues the evidence of his sexual conduct with his wife did not tend to prove the acts alleged in the charge against him and, thus, was not relevant; and, if this evidence were relevant, its probative value was greatly outweighed by its prejudicial effect. In response, the state contends the rule prohibiting uncharged misconduct evidence is limited to uncharged crimes and defendant's sexual conduct with his wife was not a crime; therefore, there was no possibility the jury could base their

conviction on evidence of an uncharged crime. Moreover, this evidence of defendant's sexual conduct, the state contends, was relevant to show defendant's disposition for the type of sexual conduct charged and to corroborate C's testimony.[2] The state's arguments are not persuasive.

### Limits of the Uncharged Misconduct Doctrine

Without citation to supporting authority, the state makes the bald assertions that the uncharged misconduct doctrine is limited to uncharged crimes; the uncharged sexual misconduct in issue was not a crime because defendant and Mrs. Kitson were husband and wife at the time this alleged misconduct took place; evidence of this noncriminal sexual conduct, therefore, avoids the rigors of the uncharged misconduct doctrine and is admissible.

 The state makes these bald assertions in the Argument portion of its brief. It does not, however, develop this argument any further nor support it with any citations to law. Therefore, the argument is not properly before us. *See State v. Trader Bobs, Inc.*, 768 S.W.2d 183, 187 (Mo.App.1989); *see also State v. Hughes*, 748 S.W.2d 733, 737 (Mo.App.1988). We, consider it, nonetheless, *ex gratia*.

 We have found no case in Missouri expressly discussing the limitations of the uncharged misconduct doctrine. This doctrine is a common law doctrine, designed to protect the defendant from evidence which may prejudice him in the eyes of the jury. Imwinkelried, *Uncharged Misconduct Evidence*, § 2:14 at 38 (1984); 1A Wigmore, *Evidence*, § 58.1–58.2 (Tillers rev.1983). The "possibility of prejudice arises whenever the evidence amounts to

---

1. Equally well recognized, in our state, is the parallel exception which permits proof of another crime, if the other crime is so linked together in point of time and circumstances with a crime charged that one cannot fully be shown without proving the other. *E.g. State v. Shumate*, 478 S.W.2d 328, 330–331 (Mo.1972); *State v. Taylor*, 320 Mo. 417, 8 S.W.2d 29, 35 (1928); *State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979). Under this latter exception, the state is permitted to paint a complete and coherent picture of the crime charged and is not required to sift and

separate the evidence and exclude the testimony tending to prove the crime for which defendant is not on trial. *State v. Sinovich*, 329 Mo. 909, 46 S.W.2d 877, 880 (1931); *King* at 150.

2. The state contends defendant's Point and Argument violate Rule 30.06 in several respects, and, therefore, defendant's contention should be reviewed only for plain error. We find this Point and Argument sufficient to meet the requirements of Rule 30.06.

an attack on the defendant's character", Imwinkelried at 38; when evidence is used to show the defendant is a bad or evil man to support the further inference that he therefore committed the crime with which he is charged. In the eyes of the jury, noncriminal conduct may work as much prejudice as criminal conduct. We find no reasons to draw a bright line at crimes.

Here, the state admits to using defendant's alleged sexual conduct with his wife—requests for anal intercourse and insertion of an object into orifices—to show defendant had a "disposition ... for that type of sexual activity." This is a plain, direct and focused attack on defendant's character—a possible "sodomizer" or "pervert"; therefore, a bad character who, because of his bad character, must have committed the crime charged.

Society's standards for character are reflected in a jury, and those standards are not necessarily congruent with the standards for criminality. We, therefore, do not limit the doctrine of uncharged misconduct evidence to crimes, and we find the evidence of noncriminal sexual conduct here is as inadmissible as that conduct would be if it were criminal conduct.

### Admissibility On Other Grounds

■ This Court has recently addressed the issue of the admissibility of uncharged misconduct evidence when the crime charged is a sexual crime and the uncharged conduct is a sexual crime. *State v. Brooks*, 810 S.W.2d 627 (Mo.App.1991); *State v. Lachterman*, 812 S.W.2d 759 (Mo. App.1991). There, we recognized that our courts have shown an increasingly liberal attitude toward admitting into evidence uncharged sexual misconduct of a defendant. *Lachterman, supra* at 765; *see also State v. Courter*, 793 S.W.2d 386 (Mo.App.1990). But, we also noted that, prior to *Lachterman*, our courts, and specifically our Supreme Court in *State v. Atkinson*, 293 S.W.2d 941 (Mo.1956), have consistently rejected the use of uncharged sexual misconduct to prove the defendant has a disposition or propensity for certain types of sexual conduct to support the further use of

that disposition or propensity as circumstantial proof of the defendant's conduct. *Lachterman, supra* at 766; *Courter, supra* at 389; *State v. Taylor*, 735 S.W.2d 412, 417 (Mo.App.1987). Although this concept, labeled the "depraved sexual instinct doctrine" by the Court in *Taylor*, has been rejected in name, it has been adopted in fact. *See, Lachterman, supra* at 766; *see also, Brooks, supra*, 810 S.W.2d at 631, 633–634. The evidence of sexual misconduct rejected under this concept is simply admitted under the strained and questionable guise of one of the well established exceptions to the rule prohibiting the use of sexual misconduct to attack character. *Lachterman* and *Brooks, supra*.

The concept of a "depraved sexual instinct", however, has been used by courts in other jurisdictions to create a special exception to the normal rule. *See, Taylor, supra* at 417; Imwinkelried, *supra*, § 4:14 at 37. Those courts restrict this special exception to so-called "aberrant, abnormal, degenerate ... sexual conduct" and admit evidence of "homosexual acts, incest, child molestation, and sodomy, but [exclude] evidence of 'normal' sexual misconduct such as heterosexual rape." Imwinkelried, § 4:14 at 37. There are two reasons most often given by these courts to support this exception: (1) sexual crimes are difficult to prove, usually being committed in private and rarely corroborated, and (2) such deviant sexual offenders are exceptionally recidivistic. *Id.* However, these courts usually ignore a countervailing prejudicial effect. In sexual crimes, the prejudice against the defendant is likely to be the greatest, and, because of the privacy of those crimes, the danger of unchecked false testimony is also likely to be great. Gregg, *Other Acts Of Sexual Misbehavior And Perversion As Evidence In Prosecutions For Sexual Offenses*, 6 Ariz.L.Rev. 212 (1965).

With this background, we expressly created a new exception in *Lachterman, supra*. We made uncharged sexual misconduct admissible to show a defendant's disposition or propensity when the defendant is charged with a sexual crime against a child and the uncharged sexual misconduct

is the same conduct with a child or children of the same sex as the victim. *Lachterman* at 768. In *Lachterman*, we said the sexual crime against the child-victim was so aberrant that it had exceptional probative value. However, we expressly recognized the possible prejudicial impact of admitting evidence of uncharged sexual crimes. We, therefore, emphasized that this new exception is narrow and must be narrowly construed. And, so we stated: "[i]t is not our intention to open the door for the admission of evidence of any type of sexually aberrant behavior on the part of [a] defendant." *Id.*

We find no reason to expand the *Lachterman* exception here. Admittedly, we have no more scientific data before us now than we had before us in *Lachterman*. Thus, we can have no greater scientific confidence in the uncharged sexual misconduct against children in *Lachterman* as a predictor of behavior than of the uncharged sexual misconduct here. This, however, does not compel us to discount the obvious. Even the most bizarre sexual act between husband and wife is qualitatively different from the same act between the husband, as a father, with his son. It is a difference in kind not degree. The emotional relationship between a husband and wife obviously differs from the relationship between a father and a son. And, a wife is obviously a different sex than the son. Given these differences, an atypical sexual act between a husband and wife has only minimal, if any, probative value as a predictor of the husband's conduct as a father with his son. The probable prejudice worked by admitting evidence of the atypical sexual practice is much greater. The probative value is simply outweighed by the prejudice.

Moreover, the testimony that defendant inserted glass tubing into his wife's vagina and that he inserted glass tubing into his own rectum at unstated times has no relevance here and simply increased the prejudice. Defendant was not charged with inserting inanimate objects into his own rectum and C's rectum. Defendant was charged with "sodomy ... in that [he] had deviate sexual intercourse with [C]." "De-

viate sexual intercourse means any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." Section 566.010 RSMo. Thus, defendant was not charged with sexual conduct involving inanimate objects, and we do not adopt the "depraved sexual instinct" concept.

The analysis we use here is neither novel or unsound. Defendant did testify here. But, he did not put his character in issue. We, long ago, abolished the "morality rule," when a defendant testifies but does not offer evidence in support of his character. *State v. Williams*, 337 Mo. 884, 87 S.W.2d 175 (1935). And, the state does not attempt to justify Mrs. Kitson's testimony as a permissible attack on defendant's reputation for truth and veracity.

Moreover, the state does not attempt to justify her testimony under one of the well known exceptions to the uncharged misconduct doctrine. Without that justification, the state's attack on defendant's character by showing prior acts of sexual misconduct has long ago been held impermissible. *See, e.g. State v. Brooks, supra.*

The state relies, primarily, on *State v. D.A.R.*, 752 S.W.2d 910 (Mo.App.1988), adopted by our colleagues in the Western District. The state's reliance is misplaced.

In *D.A.R.*, the defendant was charged with committing two acts of oral sodomy upon his nine year old daughter. The Court allowed the defendant's former girlfriend to testify that she consensually engaged in oral sex with defendant. This testimony was admissible, the Court said, because it

tends to corroborate the child's testimony that the defendant made her perform oral sex on him by indicating a disposition on the part of the defendant for that type of sexual activity.

*Id.* at 913.

*D.A.R.* is distinguishable, to the extent it needs to be distinguished. There, the defendant contended the evidence of uncharged oral sex was inadmissible on the sole ground that it was irrelevant. The Court specifically noted this was a single

contention, narrowly focused on relevancy and not on character. Indeed, the Court distinguished *State v. Hayes*, 356 Mo. 1033, 204 S.W.2d 723 (1947), cited by the defendant there, on the grounds that in *Hayes* the uncharged sexual conduct was rejected as an improper attack on character. *Id.*

Here, defendant's continuous objection to Mrs. Kitson's testimony as irrelevant was always joined by his objection that, if relevant, the relevancy of her testimony was outweighed by its prejudicial effect. And, we agree.

More important, perhaps, in *D.A.R.*, the Court relied on *State v. Kornegger*, 363 Mo. 968, 255 S.W.2d 765 (1953) in which the defendant was charged with exposing his "private parts" to a seven year old girl and having her perform "indecent and improper practices" on him. *Kornegger* 255 S.W.2d at 767. In *Kornegger*, the Court approved the admission of the young girl's testimony that the defendant exposed himself to her two days after the charged crime occurred, on the ground it showed the defendant's disposition or propensity to engage in the conduct charged. *Id.* at 768–69. However, admission of a defendant's uncharged sexual misconduct with a child to show disposition or propensity to engage in the same conduct with the same child is simply a more narrow application of the exception we recognized and adopted in *Lachterman.*

Finally, we are not persuaded by the state's argument that Mrs. Kitson's testimony is corroborative evidence and, therefore, admissible. This simply is a verbal disguise to permit an impermissible attack on defendant's character.

### *Defendant's Remaining Arguments*

 Defendant also contends the court erred by admitting hearsay statements made by C to Mrs. Kitson and to three other adult witnesses—a deputy sheriff, a nurse, and a child counselor. In Missouri, an out-of-court statement "made by a child under the age of twelve" relating to rape or sodomy is admissible as substantive evidence, if, after a hearing, the trial court finds that the "time, content and circumstances of the statement provide sufficient indicia of reliability...." Section 491.075.1. The trial court conducted the required hearings and made findings as to each of these adult witnesses.

The admissibility of these hearsay statements will arise again at retrial. Thus, normally, we would address that issue now. However, we do not do so because of a fatal procedural defect in defendant's appeal which may be corrected if another appeal becomes necessary.

As appellant, defendant is required to cite the page of the transcript or legal file reflecting the operative facts which support the statements, reasoning and conclusions made in his brief. Rule 30.06(h); *e.g. State v. Culkin*, 791 S.W.2d 803, 813 (Mo. App.1990). He did not do so.

Defendant's attack on the admissibility of the hearsay statements covers some 17 pages of his brief with 16 cited cases. The trial testimony of C, Mrs. Kitson and the three other adult witnesses covers some 200 pages of the trial transcript and 61 pages of the transcripts of the pre-trial hearings, to say nothing of some 240 pages of the depositions of C and these witnesses. Nonetheless, in support of his argument, defendant only cites generally to several pages of C's trial testimony and to the deposition of C without specific page reference. Quite simply, defendant has provided us no precise record support for his arguments.

We are obliged to remain impartial. We are not permitted to become a witting or unwitting adversary of the state and search the record for testimony to support defendant's arguments. *Culkin, supra.* Normally, then, we would simply decide the issue in favor of the state on procedural grounds, making that decision the law of the case in any further proceedings. Here, we decline to do so and, in turn, decline to reach the issue of the admissibility of C's hearsay statements.

 Defendant also contends the state failed to make a submissible case because C's testimony was so contradictory it was unbelievable and there was no corroborat-

ing medical evidence supporting the charge. We disagree.

Defendant cites no specific testimony in C's trial testimony which is inconsistent nor does he cite any specific testimony in C's depositions inconsistent with C's trial testimony. However, we have read C's testimony. C testified that defendant touched C's penis, and that defendant put his penis in C's mouth and in C's rectum. Defense counsel used C's deposition testimony to cross-examine him. C did not remember much of his deposition testimony; he recanted some and agreed with some. But, he never directly contradicted himself in the trial testimony when describing the acts committed by defendant. Moreover, some contradictions in C's testimony would be expected because of his young age. *State v. Kerr*, 767 S.W.2d 344, 346 (Mo. App.1989).

Furthermore, we in Missouri, do not require a sodomy victim's testimony to be corroborated by medical evidence. *E.g.* *State v. Raines*, 748 S.W.2d 865, 869 (Mo. App.1988). The victim's testimony alone may make a submissible case. *State v. Bagby*, 734 S.W.2d 518, 520 (Mo.App.1987).

Defendant next argues that the trial court erred in not giving his proffered instructions on lesser included offenses. Defendant, however, failed to include those instructions in his brief and has, therefore, not preserved the issue for appeal. Rule 30.06(e); *State v. Money*, 697 S.W.2d 269, 271 (Mo.App.1985). Moreover, defendant failed to state what lesser included offense is supported by the evidence of and how that evidence supports it.

Defendant's other points relate to the state's failure to comply with discovery and his discovery of new evidence. Our remand makes these issues moot.

Judgment reversed and remanded.

SMITH, P.J., and CARL R. GAERTNER, C.J., concur.