

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD86308 |
| | ) | |
| JOHN LELAND PHELPS, | ) | Opinion filed:  July 8, 2025 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF
JACKSON COUNTY, MISSOURI
THE HONORABLE CORY L. ATKINS, JUDGE**

Before Division Two:  Cynthia L. Martin, Presiding Judge,
Gary D. Witt, Judge and W. Douglas Thomson, Judge

John Leland Phelps ("Phelps") appeals from his convictions and sentence entered by the trial court after a jury found him guilty of two counts of felony statutory rape in the first degree, one count of felony statutory sodomy in the first degree, one count of felony sodomy in the first degree, one count of the class D felony of incest, and one count of the class E felony of incest.  Phelps raises one Point on Appeal, claiming the "trial court abused its discretion in overruling Phelps's objections and allowing testimony that Phelps engaged in certain sexual acts with his spouse[.]"  Phelps argues this evidence was "substantially more

prejudicial than probative" in that it "had little probative value, it was detailed and graphic, and the inadmissible evidence directly related to the subject matter of the charged offenses, thus resulting in the jury finding Phelps guilty due to his sexual proclivities." We affirm.

## Factual and Procedural History[1]

In 2009, Phelps pled guilty to one count of felony child molestation in the first degree. In 2016, after serving his sentence for that conviction, Phelps returned to living with his spouse ("Spouse"), his son ("Son"), and his twelve-year-old daughter ("Victim"). Within a week of coming home, Phelps came into Victim's bedroom at night and "put his penis inside of [Victim's] vagina." Before penetrating Victim, Phelps told her, "I have the title, so why not." Phelps stopped "[w]henever he was done[,]" and Victim stayed in her room. Phelps penetrated Victim's vagina with his penis again the following night. Phelps continued to abuse his daughter nearly every day, and at some point, Phelps touched Victim's vagina with his mouth.

Victim did not report the abuse because Phelps threatened her. This included threats to "skin the cats alive[,]" and to kill Spouse and Son. Phelps also threatened to hurt Victim and to kill or hurt himself. Victim believed Phelps when he threatened her because of his former military career.

---

[1] "We review the evidence 'in the light most favorable to the jury's verdict.'" *State v. Gant*, 708 S.W.3d 899, 902 (Mo. App. W.D. 2025) (quoting *State v. Winfrey*, 337 S.W.3d 1, 3 (Mo. banc 2011)).

On September 17, 2016, Victim had a friend ("Friend") over to spend the night. The two slept in Victim's bed. At some point while Victim was sleeping, Friend saw Phelps enter Victim's bedroom and remove blankets from Victim. Phelps briefly left the room and returned again. This time, Friend could hear Phelps remove Victim's clothes and then heard a "wet sound" coming from Victim's vaginal area.

The next day, Friend sent a text message to Victim and another friend "to tell [Victim] what had happened." After Spouse discovered the text messages on Victim's phone, Spouse took Victim to the hospital for a physical examination. At trial, a child abuse pediatrician ("Pediatrician") confirmed this sexual assault. Victim and Son were removed from the home. A law enforcement officer ("Sergeant") spoke with Spouse and a Child Protection Center ("CPC") forensic interviewer interviewed Victim but no charges were filed, and after a period of time Victim and Son came back to live in the home with Phelps and Spouse. In March 2017, Sergeant again spoke with Spouse and Victim. Victim confirmed to Sergeant that "it was still occurring." Sergeant testified that he submitted this information to his supervisors via a police report.

Phelps continued to assault Victim. On one occasion between September 3, 2018 and September 10, 2018, "instead of [penetrating the Victim's vagina] as he normally would, [Phelps] [inserted his penis] in [Victim's] butt." Victim tried to stop Phelps, including by kicking and screaming, but her strength was not enough to make him stop. Victim described it as horrible and it caused her "a lot of pain."

3

The next day, Victim decided she would come home from school and commit suicide. While Victim was at school, a friend grew concerned about her, and "forced [Victim] to the counselor's office to tell them what was going on." Victim showed the counselor text messages Phelps had sent her. As a result, Victim and Son were again removed from the home.

Victim returned to the hospital for another physical examination. Pediatrician testified that at this examination, Victim reported "both digital or hand to vaginal contact, as well as penis to vagina and penis to anus contact." Victim also reported physical aggression, including being restrained by her arms, being pulled off a bed onto the floor, and being slammed into a wall. On September 14, 2018, Victim underwent another forensic interview at CPC.

Phelps was ultimately arrested and charged in 2019.[2] His trial commenced on February 6, 2023. At trial, the State offered the testimony of Victim, Friend, Spouse, Son, Sergeant, Pediatrician, and others. The State also presented online messages between Phelps and Victim wherein Phelps called Victim both sexy and beautiful. Phelps presented no evidence.

While Victim was testifying at trial, the State asked Victim if Phelps ever described his sexual relationship with Spouse to her. Phelps's counsel objected

[2] Phelps was initially indicted by a grand jury for one count of felony statutory sodomy in the first degree, one count of the class E felony of incest, one count of felony statutory rape in the first degree, and one count of the class D felony of incest. Prior to trial, Phelps was arraigned on a superseding indictment, and trial proceeded on the following charges: two counts of felony statutory rape in the first degree, one count of felony statutory sodomy in the first degree, one count of felony sodomy in the first degree, one count of the class D felony of incest, and one count of the class E felony of incest.

4

that this evidence had little, if any, probative value and argued that it was "incredibly prejudicial[.]" The trial court overruled the objection and allowed Victim to answer.[3] Victim testified that "He told me he didn't find [Spouse] sexually attractive because she used a dildo to fuck him." After this single question, the State moved to another line of inquiry.

During Spouse's testimony, the State asked her to describe the evolution of her sex life with Phelps after he moved back into the home during 2016. Spouse explained that the two had sex regularly until, after a few months, the two "weren't having sex at all." Then, the State asked Spouse whether she and Phelps had ever engaged "in sex using a sex toy?" Phelps's counsel objected, reviving his previous objection "to any testimony regarding sex toys" because some of the jurors "may find that practice . . . to be deviant sexual activity that only deviant, strange, people would engage in." Phelps's counsel continued, explaining that the prejudicial effect of this evidence "certainly outweighs the probative value." The court overruled Phelps's objection.[4] Spouse's testimony continued, as follows:

[The State]: [Spouse], I think where we left off did you both engage in sex using a sex toy?

[Spouse]: Yes.

[The State]: And what kind of sex toy was that?

---

[3] At that time, Phelps's counsel asked for a continuing objection "regarding any discussions about the sexual practices of [Phelps] and [Spouse]." The trial court permitted this continuing objection.

[4] Phelps's counsel again asked for a continuing objection "to this particular line of questioning regarding the sexual aid or strap-on sexual activity, specific sexual activity between Mr. Phelps and his wife." The trial court permitted this continuing objection.

[Spouse]: We used a strap-on.

[The State]: And who used it on who?

[Spouse]: I used it on him.

During the State's closing argument, no reference was made to Phelps's sexual relationship with Spouse nor the use of a sex toy. During Phelps's closing argument, however, Phelps's counsel argued:

> So that's one sign of the desperation of the prosecution. But really probably what takes the cake, they asked [Spouse] about her intimate sexual practices with her husband. I mean, it's almost be beyond the pale. You tell me, I honestly don't get it? What does a strap-on have to do with anything? What does that have to do with anything in this case, but they want that in.
>
> They want to say, hey, they stopped having sex. What's the implication? Oh, he stopped having sex with his wife. Why? Because he's sexually attacking his daughter, right? That's what they want to say, right?
>
> We all know it's life. People sometimes stop having sex. These people have been apart for quite a long time. Who knows maybe their attraction is not the same as it was. So he stops having sex with him[sic] wife, doesn't mean he's having sex with his daughter, right? . . . This allegation, this suggestion, well, he must have sex with his daughter because he has stopped having sex with his wife. It's ludicrous. Ludicrous.

Responding in rebuttal, the State countered the defense's argument:

> They said why did we put into evidence that they had to use a sex toy. Well, we don't pick what makes evidence important. [Phelps] made that evidence important when he told [Victim] that he was no longer attracted to his . . . [Spouse] after the strap-on incident. [Phelps] made that important when he told [Victim] it was important to him, that's why it's important.

On February 10, 2024, the jury found Phelps guilty of all six counts.[5] He was sentenced to life in prison for both counts of felony statutory rape, life in prison for

---

[5] After the jury's verdict was read, Phelps's counsel orally requested, and the trial court granted, a ten-day extension to file a motion for a new trial. Phelps timely filed a

both counts of sodomy, seven years for class D felony incest, and seven years for class E felony incest. The trial court ordered all sentences to run consecutively. This appeal follows.

## Standard of Review

"The trial court has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Watson*, 697 S.W.3d 44, 52 (Mo. App. W.D. 2024) (quoting *State v. Ratliff*, 622 S.W.3d 736, 744 (Mo. App. W.D. 2021)) (internal quotation marks omitted). The trial court only abuses its discretion "when its 'ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.'" *Id.* at 52 (quoting *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020) (internal quotation marks omitted)). We review the trial court's decision regarding whether to admit or exclude evidence "for prejudice, not mere error, and will reverse only if the error was so prejudicial that

motion for a new trial on March 7, 2023. In that motion, he asserts several grounds for a new trial. One of these bases is the improper admission of propensity evidence, including evidence that Phelps consented to and submitted to "being anally penetrated by a strap-on dildo during consensual sex with his wife[.]" As discussed in the Statement of Facts, *supra*, Phelps's counsel also objected to the evidence when it was offered through the testimony of Victim and Spouse. Accordingly, the issue was properly preserved for appeal. *See State v. Loper*, 609 S.W.3d 725, 732 (Mo. banc 2020) (quoting *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016)) ("For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial.").

it deprived the defendant of a fair trial." *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017) (quoting *State v. Forrest*, 183 S.W.3d 218, 223-24 (Mo. banc 2006)).

## Analysis

In his single point on appeal, Phelps challenges the trial court's admission of what he characterizes as propensity evidence. Phelps asserts that the "trial court abused its discretion in overruling [his] objections and allowing testimony that [he] engaged in certain sexual acts with his spouse, because the evidence was more prejudicial than probative[.]" Specifically, Phelps claims "the testimony regarding [his] consensual sexual acts with his spouse had little probative value, it was detailed and graphic, and the inadmissible evidence directly related to the subject matter of the charged offenses, thus resulting in the jury finding [him] guilty due to his sexual proclivities."

As an initial matter, the parties disagree regarding the State's purpose for offering the challenged evidence. Phelps argues the State offered the testimony "to establish Mr. Phelps as some kind of sexual deviant and that because of his perversion he had a propensity to commit the charged crimes." Specifically, Phelps directs us to *State v. Pennington* where we stated, "Propensity to commit a crime is not a proper purpose for admission of evidence because it 'may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged." *State v. Pennington*, 24 S.W.3d 185, 189 (Mo. App. W.D. 2000) (quoting *State v. Bernard*, 849 S.W.2d 10, 16 (Mo. banc 1993), superseded by statute on other grounds,

8

section 566.025, RSMo 1994, as stated in *State v. Dudley*, 912 S.W.2d 525, 527 n.1 (Mo. App. W.D. 1995)).  On the other hand, the State contends the evidence was offered to show Phelps's motive for committing the charged act and to establish the requisite intent for sodomy, statutory sodomy, and one of the incest counts.[6]

"If evidence of prior . . . conduct is offered for a reason other than demonstrating a defendant's propensity to commit the crime charged, and is logically and legally relevant for that alternative purpose, then the evidence is . . admissible."  *State v. Joyner*, 458 S.W.3d 875, 881-82 (Mo. App. W.D. 2015) (citation omitted).  Such evidence may be admissible if,

> [I]t tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial.

*Id.* at 882 (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011).

At trial, when Phelps's counsel initially objected to Victim's testimony regarding what Phelps told her about his sexual attraction, the State explained that the evidence "goes to a specific element that the State has to prove beyond a reasonable doubt that the defendant did this for his sexual desire."  When Phelps's counsel objected to Spouse's testimony regarding the same subject matter, the

---

[6] Phelps was tried for one counts of felony statutory sodomy, one count of felony sodomy, and one count of the class E felony of incest, amongst the other charges.  To convict on those three charges, specifically the State had to prove that Phelps engaged in "deviate sexual intercourse" with Victim.  The relevant statutory definition of deviate sexual intercourse provides that the specified sexual act be done for the purpose of arousing or gratifying the sexual desire of any person.  Sections 566.010(1) and (3).

State again argued that "it has everything to do with the charged conduct in this case . . . [T]his evidence elicited from this witness shows that the defendant had lost sexual attraction to this witness, and then went to the victim in this case[.]" Additionally, the challenged evidence was clearly distinguishable from the charged acts in that the challenged evidence concerned legal activity between consenting adults. It is plainly clear that the State offered the challenged evidence to "show a motive and intent" rather than for an improper propensity purpose.

Nevertheless, as discussed, the State had the burden to establish that the evidence was admissible by proving it was both logically and legally relevant. *Id.* at 883. "Logically relevant evidence is admissible only if it is also legally relevant, requiring its probative value to outweigh its prejudicial effect." *State v. Chesher*, 700 S.W.3d 279, 286 (Mo. App. W.D. 2024). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (quoting *State v. Taylor*, 588 S.W.3d 632, 638 (Mo. App. W.D. 2019) (internal quotation omitted)). In his point on appeal, we note that Phelps actually concedes that the challenged evidence is logically relevant by stating that it "directly related to the subject matter of the charged offenses[.]" We agree.

The State had to prove that Phelps engaged in "deviate sexual intercourse" with Victim for his sexual gratification in order to establish such element of sodomy, statutory sodomy, and incest. Victim's testimony made the existence of the sexual gratification element more probable. Phelps told Victim he no longer found Spouse sexually attractive because of the sex toy episode. He also expressed

10

to Victim that she was "sexy" and "beautiful." As the State argued, it is logical to infer that as Phelps found reason to find Spouse sexually unattractive, he found Victim "sexy" and "beautiful," and he transferred his sexual desires towards her. In other words, Victim's testimony permitted the fact finder to conclude that Phelps pursued a sexual relationship with Victim for his sexual gratification. Spouse's corroborating testimony, that after she used a sex toy on Phelps, the two stopped engaging in sexual intercourse, corroborates Victim's testimony regarding same and thus supports that conclusion. Moreover, and for the same reasons, Phelps's admissions to Victim, as well as Spouse's corroborating statement, is logically relevant in determining Phelps's motive to engage in sex with Victim. In sum, the evidence is logically relevant.

Phelps directs us to *State v. Kitson*, 817 S.W.2d 594 (Mo. App. E.D. 1991), in which a new trial was ordered because irrelevant evidence was improperly admitted against a defendant charged with sodomizing his son. *Id.* at 599. There, the defendant was charged with inserting his penis into the victim's rectum. *Id.* The State offered evidence that the defendant and his wife inserted glass tubing into his own rectum, and the Court found that such evidence had "no relevance" to the case before them. *Id.* However, in *Kitson*, the State admitted "to using defendant's alleged sexual conduct with his wife" for the sole purpose "to show defendant had a 'disposition . . . for that type of sexual activity.'" *Id.* at 598. The court opined that such was "a plain, direct and focused attack on a defendant's character[.]" *Id.* For this reason, *Kitson* is distinguishable from the present case.

11

Here, evidence regarding Phelps's sexual history with his wife was offered to establish an ultimate fact at issue – whether Phelps found sexual gratification from his actions with Victim – and to provide the fact finder with Phelps's motive for engaging in those acts. The challenged evidence establishes facts necessary to prove or disprove Phelps's guilt. *Kitson* is not helpful to Phelps.

"Logically relevant evidence is admissible only if it is also legally relevant" which is determined by weighing "the probative value of the evidence against its costs – unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Prince*, 534 S.W.3d at 817-18 (citing *State v. Anderson*, 306 S.W.3d 529, 538 (Mo. banc 2010)). "If the prejudice of the logically relevant evidence outweighs its probative value, it should be excluded." *Id.* at 818. "The determination of legal relevance rests firmly within the sound discretion of the trial court." *State v. McWilliams*, 698 S.W.3d 783, 790 (Mo. App. W.D. 2024) (citation omitted).

As discussed above, Victim's testimony tended to prove Phelps's guilt – both by establishing his intent to engage in "deviate sexual intercourse" with Victim for his sexual gratification, and by showing his motive to engage in said acts with *this* particular Victim. Spouse's corroborating testimony only strengthened the value of Victim's testimony. In no way did this *confuse* the issues, but rather it *clarified* for the jury Phelps's motive and a specific element of some charges.

Further, the State minimized the risk of prejudice surrounding the challenged evidence. The State minimized the amount of time it spent eliciting

12

testimony regarding Phelps's sexual relationship with Spouse. The portion of Victim's and Spouse's testimony that is challenged on appeal represents only a small portion of the overall examination of those witnesses. Victim's challenged testimony is merely one response in the nearly 96 pages of transcript dedicated to Victim's examination. Similarly, Spouse's three-question colloquy corroborating Victim's testimony was a short portion of her examination. Moreover, the State's questions elicited brief, factual responses that were limited to discussing what had occurred and what Phelps had said. For the same reasons, the evidence could hardly be said to have caused undue delay or was a waste of time. And, these two limited bits of testimony cannot be said to be cumulative in nature.

Additionally, isolated evidence regarding the sexual relationship between Phelps and Spouse was far less jarring than the pervasive acts of abuse which Victim endured which were described to the jury in detail. Evidence regarding the substantial acts of abuse Phelps committed against Victim included Victim's testimony that Phelps regularly entered her bedroom at night, removed her clothing, and inserted his penis into her vagina. It also included Victim's explanation for keeping the abuse to herself – Phelps's threats and military history to back them up. Additionally, it included Friend's testimony about witnessing Phelps abuse Victim while Victim was sleeping, corroborating Victim's testimony that Phelps regularly abused her in the evening when others were sleeping. The State also presented online messages exchanged between Phelps and Victim, detailing the sexual nature of their interactions and depicting Phelps referring to

13

Victim as "sexy" and "beautiful." As well, the jury heard from Pediatrician about two examinations of Victim, a counselor regarding Victim's statements, and law enforcement officers regarding their investigations and interviews.

On the other hand, the challenged evidence consisted of two questions to the Victim regarding what Phelps told her about his sexual relationship with Spouse and a few follow up questions to Spouse to corroborate Victim's testimony. In both instances, the State asked pointed questions seeking to elicit targeted information used to prove Phelps's motive for engaging and intent to engage in sexual intercourse with his daughter before immediately moving on to evidence that Phelps committed the charged crimes.

Additionally, the State did not reference such testimony during its closing argument. Instead, the State focused on Victim's testimony about what Phelps did to her. It was Phelps that reminded the jury of the evidence that he now argues was unfairly prejudicial. Even after Phelps criticized the State for utilizing the challenged evidence during Phelps's closing argument, the State only spent a few moments of its rebuttal responding to Phelps's contention.

Overall, the challenged evidence was not the focus of the State's presentation of evidence during Phelps's trial, but instead it was merely one portion of the State's case utilized to prove a specific element of certain charges, as well as motive. In nearly 900 pages of trial transcript, the challenged evidence consists of a mere 28 lines of testimony. In short, given the overwhelming evidence against Phelps

14

and the targeted use of the claimed prejudicial evidence, to claim the jury found Phelps "guilty due to his sexual proclivities" is specious.

The probative value of the challenged evidence was not outweighed by a risk of unfair prejudice to Phelps. Accordingly, the challenged evidence is legally relevant such that it was not an abuse of discretion for the trial court to admit the challenged testimony over Phelps's objections. Point I is denied.

### Conclusion

For the above and foregoing reasons, the judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.